1  **COHELAN KHOURY & SINGER**
2  Michael D. Singer (SBN 115301)
   msinger@ckslaw.com
3  Kristina De La Rosa (SBN 279821)
   kdelarosa@ckslaw.com
4  605 C Street, Suite 200
   San Diego, CA 92101
5  Telephone: (619) 595-3001/Facsimile: (619) 595-3000

6  Attorneys for Plaintiff Lisa L. Lee, on behalf of herself
7  and all others similarly situated

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/03/2020** at 12:34:00 PM

Clerk of the Superior Court
By Regina Chanez,Deputy Clerk

8  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  **COUNTY OF SAN DIEGO**

10 LISA L. LEE, on behalf of herself and all others similarly situated,

11                    Plaintiffs,

12

13              v.

14

15 CVS PHARMACY, INC., a Rhode Island Corporation; CVS HEALTH
16 CORPORATION, INC., a Delaware Corporation; and DOES 1 through 100,
17 inclusive,

18                    Defendants.

19

Case No. 37-2020-00022843-CU-BT-CTL

**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND/OR INJUNCTIVE/DECLARATORY RELIEF**

1.  **VIOLATIONS OF THE CARTWRIGHT ACT [Cal. Bus. & Prof. Code §§ 16720 and 16727]; and**

2.  **VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") [Cal. Bus. & Prof. Code §§ 17200-17208, *et seq.*]**

3.  **VIOLATIONS OF CALIFORNIA'S LEGAL REMEDIES ACT**

**DEMAND FOR JURY TRIAL**

20
21
22
23
24
25
26
27
28

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

First Amended Class Action Complaint          Case No. 37-2020-00022843-CU-BT-CTL

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1.     Plaintiff LISA L. LEE, brings this civil antitrust and unfair competition class action on behalf of herself, individually, and all others similarly situated against CVS PHARMACY, INC., a Rhode Island Corporation; CVS HEALTH CORPORATION, INC., a Delaware Corporation; and DOES 1 through 100, inclusive (hereinafter referred to as "Defendants" or "CVS") and hereby complains and alleges as follows based on investigation, information, and belief:

## I.     <u>INTRODUCTION</u>

2.     This class action lawsuit involves the unfair, unlawful, and anti-competitive conduct and false representations of Defendants. CVS purposefully misuses its market power to force consumers to purchase opioid overdose reversal medication in order to fill lawfully prescribed and medically necessary prescriptions for pain medication.

3.     In order to fill a prescription for a medication containing opioids, such as hydrocodone-acetaminophen, CVS forces consumers to simultaneously purchase a prescribed medication, Naloxone or similar drug, designed to rapidly reverse an opioid overdose. The opioid overdose reversal medication can cost more than fifty times the actual opioid pain relief prescription.

4.     CVS represents to consumers that the concomitant purchase of the overdose reversal medication is required in order for it to fill the opioid prescription. CVS further represents to the consumer that it cannot and will not fill a prescription for opioid medication if a consumer refuses to purchase the expensive overdose reversal medication.

5.     Defendants' representations are false. In reality, a pharmacy cannot refuse to fill a lawfully prescribed medication, nor can it impose the requirement to purchase additional medication as a condition for filling an opioid prescription.

6.     Defendants wield its market power to force consumers to purchase opioid reversal medication at costly prices set by CVS, which not only cause injury to consumers, but also has an anti-competitive effect on the market. As a result of CVS's action, consumers are foreclosed from the option of purchasing the opioid reversal medication from other pharmacies, including competitors of Defendants.

First Amended Class Action Complaint          Case No. 37-2020-00022843-CU-BT-CTL

7.      LISA L. LEE ("Plaintiff") brings this class action against CVS PHARMACY, INC., CVS HEALTH CORPORATION, INC., and DOES 1 through 100, inclusive pursuant to the Cartwright Act, Cal. Bus. & Prof. Code sections 16720, *et seq*. and the Unfair Competition Law ("UCL"), Business & Professions Code sections 17200, *et seq*. to obtain remedies for Defendants' unlawful, fraudulent, and unfair conduct in misrepresenting and omitting material facts in order to force consumers to purchase medicines they would not choose to purchase from CVS.

## II.    JURISDICTION AND VENUE

8.      Venue as to each Defendant is proper in this judicial district. Code of Civil Procedure section 395. Defendants conduct business and commit violations of the law which have a direct effect on aggrieved consumers and their competitors in San Diego County and California.

9.      Plaintiff's claims raise no federal question and are not subject to federal jurisdiction.

10.     This action is brought under the Cartwright Act, Cal. Bus. & Prof. Code sections 16720, *et seq*. and the Unfair Competition Law ("UCL"), Business & Professions Code sections 17200, *et seq*. for equitable non-monetary and monetary relief due to Defendants' unlawful conduct.

11.     This Court has personal jurisdiction over Defendants because CVS Pharmacy, Inc. and its affiliates do business in the state of California, the claims asserted herein arise from conduct occurring in California.

12.     Venue is proper in the City and County of San Diego because each Defendant does business in San Diego.

13.     Venue is further proper in the City and County of San Diego because acts giving rise to the claims asserted herein were committed in the county of San Diego.

## III.    PARTIES

14.     At all times relevant, Lisa L. Lee was and is a natural person over the age of eighteen, residing in California.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 2 -

First Amended Class Action Complaint          Case No. 37-2020-00022843-CU-BT-CTL

15.    Plaintiff is informed, believes, and alleges Defendant CVS HEALTH CORPORATION is a Delaware Corporation and has conducted business within the state of California.

16.    Plaintiff is informed, believes, and alleges Defendant CVS PHARMACY, INC. is a Rhode Island Corporation and has conducted business within the state of California. CVS PHARMACY, INC. is a subsidiary of CVS HEALTH CORPORATION.

17.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued as DOES 1 through 100, inclusive, are unknown to Plaintiff, who sues Defendants by fictitious names under Code of Civil Procedure section 474. Plaintiff is informed and believes, and alleges, each DOE Defendant is legally responsible in some manner for the unlawful acts alleged. Plaintiff will seek leave to amend this Complaint to reflect the true names and capacities of DOE Defendants when they become known.

18.    Plaintiff is informed and believe, and based thereon allege, that each Defendant acted in all respects pertinent to this action as the agent of and/or in concert with the other Defendants, carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. Plaintiff is informed and believe that all Defendants are to be jointly and severally liable for the unlawful acts as described herein. Further, Plaintiff is informed and believe, and based thereupon allege, that Defendants, and each of them, each had knowledge and information sufficient to them to have authorized, ratified, and directed the acts of one another as their conduct relates to Defendants' uniform practices and treatment of the proposed Class Members.

## IV.    GENERAL ALLEGATIONS

19.    Defendants describes themselves as a "integrated pharmacy health care company." CVS HEALTH CORPORATION consists of several business, including more than 9,847 CVS retail pharmacies nationwide. Some analysts assert that much of the U.S. population lives within 10-15 minutes of a CVS pharmacy (or within three miles of a CVS pharmacy).

20.    It would come as no surprise, in light of its ubiquitous locations, that consumers would use CVS pharmacies for medical needs, including to fill medications during time-sensitive

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

and urgent situations or emergencies.

21.    California Business & Professions Code section 733 prohibits a pharmacy from refusing to fill a prescription drug that has been legally prescribed.

22.    Specifically, Cal. Bus. & Prof. Code section 733(a) states: "(a) A licentiate shall not obstruct a patient in obtaining a prescription drug or device that has been legally prescribed or ordered for that patient."

23.    In January 2019, a law took effect that requires opioid prescribers to also offer prescriptions for opioid-overdose reversal drugs.

24.    The law requires that a prescriber offer a prescription for a complete or partial reversal of opioid-induced respiratory depression medication; it does not impose a requirement that a patient fill and purchase a prescription for the opioid overdoes medication in order to fill an otherwise lawful prescription.

25.    Specifically, Cal. Bus. & Prof. Code section 741 states:

(a) Notwithstanding any other law, when prescribing an opioid or benzodiazepine medication to a patient, a prescriber shall do the following:

(1) Offer the patient a prescription for naloxone hydrochloride or another drug approved by the United States Food and Drug Administration for the complete or partial reversal of opioid-induced respiratory depression when one or more of the following conditions are present:

(A) The prescription dosage for the patient is 90 or more morphine milligram equivalents of an opioid medication per day.

(B) An opioid medication is prescribed within a year from the date a prescription for benzodiazepine has been dispensed to the patient.

(C) The patient presents with an increased risk for opioid overdose, including a patient with a history of opioid overdose, a patient with a history of opioid use disorder, or a patient at risk for returning to a high dose of opioid medication to which the patient is no longer tolerant.

26.    Naloxone is an opioid overdose reversal medication, a medication that works almost immediately to reverse an opioid overdose. Naloxone is currently a prescription drug, but is not a controlled substance. It has few known adverse effects, no potential for abuse, and can be rapidly administered through intramuscular injection or nasal spray. Professional first

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 4 -

responders, trained and equipped bystanders such as friends, family, and other non-health care providers (lay people), and drug users themselves can effectively respond and reverse an opioid overdose.

27.    On or about March 15, 2020, Plaintiff suffered a broken nose. At the emergency room, she was prescribed ten pills of hydrocodone-acetaminophen 10mg-325mg, a painkiller containing an opioid. She was also provided a prescription for Narcan, a brand name for Naloxone.

28.    She traveled to a CVS Pharmacy near her home to fill her prescription for her pain medication. She informed Defendants that did not want to fill her prescription for Narcan (a brand name for Naloxone). When she filled the prescription ($0.71 for ten pills), the employee at CVS required her to purchase Narcan nasal spray for $121.80.

29.    Defendants told Plaintiff that, legally, Defendants could not fill her prescription for opioid pain medication unless she also filled and purchased the prescription for Narcan.

30.    Defendants refused to fill Plaintiff's lawfully prescribed prescription for her opioid pain relief medication.

31.    Plaintiff, who had just left the emergency room and was experiencing significant pain had no choice but to rely on Defendants' representations. She had no meaningful choice but to purchase the Narcan for $121.80 in order to purchase her pain medications, and therefore incurred actual financial losses due the unlawful conduct of Defendants.

32.    In order to fill a medication for a medication containing any type of opioid, such as hydrocodone-acetaminophen, CVS maintains a common policy and practice of forcing consumers to simultaneously purchase a medication designed to rapidly reverse an opioid overdose. The opioid reversal medication can cost more than fifty times more than the actual opioid prescription.

33.    Based on information and belief, Defendants maintain a common practice and policy of representing to their consumers that the concomitant purchase of the overdose reversal medication is required by law. Defendants further represent that CVS cannot and will not fill a prescription for opioid if a consumer refuses to purchase the overdose reversal medication.

34.    Defendants' representations, made knowingly by CVS, are false. Defendants knew that the representations they made were false and that rather, Defendants were required by law to

- 5 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1   fill the prescription and could not force consumers, including Plaintiff, to fill a prescription he or
2   she chose not to.

3       35.    Defendants wield their market power to force consumers to purchase opioid
4   reversal medication at prices set by CVS which not only cause injury to Plaintiff, but also has an
5   anti-competitive effect on the market. As a result of CVS's action, Plaintiff, and other consumers
6   are foreclosed from the option of purchasing the opioid reversal medication from other pharmacies,
7   including competitors of Defendants.

8       36.    This practice is an unlawful tying arrangement in that Defendants used the "tying
9   product" of legally prescribed opioid pain medicines to induce consumers to purchase the "tied
10  product" of Naloxone, or otherwise similar opioid overdose reversal medication.

11      37.    On information and belief, Plaintiff believes that Defendants have substantial
12  market power in pain relief medicines to induce the purchase of opioid overdose reversal
13  medications, including Naloxone.

14      38.    CVS Pharmacy is the largest U.S. Pharmacy and leads the nation in total
15  Prescription Revenue. In addition to having the largest prescription revenue of any other
16  company, on information and belief, it is believed that it owns over 40% of the market with
17  respect to all pharmaceutical sales in the state of California.

18      39.    On information and belief, Plaintiff believes that Defendants have substantial
19  market power, and that they own more than 30% of the market share for pain relief medications
20  containing opioids, including hydrocodone-acetaminophen, throughout the state of California,
21  and including within the county of San Diego.

22      40.    The unlawful tying arrangement also caused a substantial amount of sale in the
23  Naloxone and other similar opioid overdose reversal medications, i.e. the "tied product."

24      41.    The ultimate effect of this unlawful tying arrangement was to cause substantially
25  lessened competition or tend to create a monopoly in the trade or commerce of pharmaceutical
26  medication, including opioid overdose reversal medications, like Naloxone, in California,
27  including within San Diego.

28  ///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 6 -

First Amended Class Action Complaint    Case No. 37-2020-00022843-CU-BT-CTL

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

42.    CVS has a common policy and practice of offering medications with similar terms and provisions as Plaintiff and to other California consumers.

43.    CVS presented the requirements for purchase of the medications to Plaintiff during times of medical necessity and urgency knowing that Plaintiff would not have any opportunity to investigate the legal adequacy of the terms provided or have a meaningful choice and opportunity to transfer a prescription to another pharmacy.

44.    A reasonable consumer in a similar situation would not understand at that moment that the representations made by CVS were unlawful. CVS was well aware that consumers, including Plaintiff, would no meaningful choice but to rely on CVS's representations.

45.    A reasonable consumer would rely on CVS's representations as truth. As a result, a reasonable consumer would be forced to succumb to the unlawful tying arrangement, and purchase the opioid overdose reversal medication in order to obtain pain medication.

46.    On information and belief, the terms and conditions of the purchase of the medication documents described herein and presented to Plaintiff and other consumers are similar to the terms and conditions offered to all members of the Class. As alleged herein, CVS institutes a common policy and practice of offering tying medications to Plaintiff and other similarly-situated Class Members.

## V.    CLASS ALLEGATIONS

47.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth.

48.    Plaintiff and the members of the Class have all suffered an injury in fact as a result of the Defendants' unlawful conduct described herein.

49.    The "Class Period" means 48 months prior to the filing of the Complaint in this action.

50.    Plaintiff brings this action on behalf of herself and all other similarly-situated persons as a class action pursuant to California Code of Civil Procedure section 382. The Class Plaintiff seeks to represent is composed of and defined as follows (the "Class"):

First Amended Class Action Complaint          Case No. 37-2020-00022843-CU-BT-CTL

All persons who, within the state of California and within the applicable statute of limitations, purchased opioid medicine from CVS and were required to purchase an opioid overdose reversal medication in order to fill the opioid medicine prescription.

51.     Plaintiff reserves the right under California Rules of Court, Rule 3.765(b) to amend or modify the Class to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues.

52.     This action is brought and may be maintained as a class action pursuant to Code of Civil Procedure section 382 because there is a well-defined common interest of many persons and it is impractical to bring them all before the court.

53.     **Ascertainable Class**: The members of the Class are readily ascertainable from Defendants' records of prescriptions issued in the 48 months preceding this filing, and the specific terms and parties identified therein.

54.     **Numerosity:** The potential quantity of members of the Class as defined is estimated to be at least 1,000 persons and is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The quantity of members of the Class is unknown to Plaintiff at this time. However, Plaintiff reasonably estimates the number of pharmacies and the number of members of the Class is greater than 1,000.

55.     **Typicality:** Plaintiff's claims are typical of the claims of all members of the Class because all members of the Class suffered similar injuries, losses, are owed restitution and/or pecuniary economic damages arising out of Defendants' common course of conduct in violation of law, and the injuries and damages of all members of the Class were caused by Defendants' wrongful conduct in violation of law, as alleged herein.

56.     **Adequacy:** Plaintiff is an adequate representative of the Class, will fairly protect the interests of the members of the Class, has no interests antagonistic to the members of the Class, and will vigorously pursue this suit via attorneys who are competent, skilled, and experienced in litigating matters of this type. Class Counsel is competent and experienced in litigating class actions and whose attorneys have nearly 100 years of combined experience in

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 8 -

handling class action procedures and class action trials.

57. **Superiority:** The nature of this action and the nature of laws available to Plaintiff make use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff for the wrongs alleged herein, as follows:

a. This case involves large corporate Defendants and a sufficient number of Class Members with many relatively small claims and common issues of law and fact;

b. If each individual member of the Class were required to file an individual lawsuit, the large corporate Defendants would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each individual member of the Class with Defendants' superior financial and legal resources;

c. Proof of a common business practice or factual pattern, of which the members of the Class experienced, is representative of the Class herein and will establish the right of each of the members of the Class to recover on the causes of action alleged herein;

d. The prosecution of separate actions by the individual members of the Class, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Class against Defendants; and which would establish potentially incompatible standards of conduct for Defendants; and/or legal determinations with respect to individual members of the Class which would, as a practical matter, be dispositive of the interest of the other members of the Class who are not parties to the adjudications or which would substantially impair or impede the ability of the members of the Class to protect their interests;

e. The claims of the individual members of the Class are not sufficiently large enough to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto without aggregation of

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 9 -

First Amended Class Action Complaint          Case No. 37-2020-00022843-CU-BT-CTL

claims and losses attributed to Defendants' illegal and deceptive conduct;

f.  Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action; and

g.  The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

58.  **Existence and Predominance of Common Questions of Fact and Law**: There are common questions of law and fact as to the members of the Class which predominate over questions affecting only individual members of the Class including, without limitation:

a.  The nature, scope, and operations of the wrongful practices of Defendants;

b.  Whether Defendants engaged in a course of unfair, unlawful, fraudulent, and/or pernicious conduct in their prescription filling practices;

c.  Whether Defendants knew or should have known that their business practices were unfair and/or unlawful;

d.  Whether Defendants owed a duty of care to Plaintiff and the Class;

e.  Whether Defendants' actions were unreasonable and/or violated California law and/or public policy;

f.  Whether Defendants harmed Plaintiff and the Class;

g.  Whether Defendants were unjustly enriched by their unlawful and unfair business practices;

h.  Whether Defendants' sale of medicine constituted an unlawful tying arrangement in violation of the Cartwright Act;

i.  Whether Defendants' have sufficient market power in the sale of opioid medications;

j.  Whether Defendants have effected a substantial amount of the opioid reversal

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 10 -

medication;

k.  Whether Defendants' practice of requiring purchase of an opioid reversal medication in order to purchase a lawfully prescribed opioid medication constituted an unlawful business practice;

l.  Whether Defendants' false representations in connection with the sale of opioid medications are likely to mislead reasonably prudent consumers acting reasonably under the circumstances;

m.  Whether Defendants made omissions of material facts;

n.  Whether Class Members are entitled to damages;

o.  Whether Class Members are entitled to restitution due to lost profits or diminished sales as a direct and legal result of Defendants' unlawful, deceptive, and/or fraudulent business acts or practices in relation to Defendants' sale of medicine;

p.  Whether Class Members are entitled to rescind all of their contracts with Defendants;

q.  Whether Class Members are entitled to injunctive and/or declaratory relief;

r.  Whether Class Members are entitled to restitution;

s.  Whether Defendants are liable for pre-judgment interest; and

t.  Whether Defendants are liable for attorneys' fees and costs.

59.  **<u>Manageability and Superiority of Class Action Procedure:</u>** The nature of this action and the nature of laws available to Plaintiff make use of the class action format a particularly efficient and appropriate procedure to afford relief to Plaintiff for the wrongs alleged herein. Plaintiff and proposed Class Counsel will obtain necessary consultants, economists, and accountants that can review the books, sales reports, and sales transaction records, and articulate the nature of the claims for restitution, damages, and declaratory/injunctive relief to enjoin Defendants from continuous and ongoing violations of the law.

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 11 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

# VI.    CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## VIOLATION OF THE CARTWRIGHT ACT, CAL. BUS. & PROF. CODE §§ 16720 and 16727
## (AGAINST ALL DEFENDANTS)

60.    Plaintiff incorporates the preceding paragraphs of this Complaint.

61.    Defendants have continually engaged in an unlawful contracts and agreements in unreasonable restraint of interstate trade and commerce, in violation of the Cartwright Act, including forced and coerced contracts and agreements with consumers requiring them to purchase opioid overdose reversal medication, like Naloxone, in order to purchase lawfully prescribed opioid pain relief medicines.

62.    The contracts have consisted of forced agreements with consumers, or unlawful tying arrangements, the substantial terms of which have been to condition the purchase of lawfully prescribed medicine on the purchase of Naloxone, or similar opioid overdose reversal medications.

63.    At all times Defendants have had substantial market power to force consumers to purchase Naloxone, or similar opioid overdose reversal medications in order to purchase lawfully prescribed medicine.

64.    On information and belief, Plaintiffs believe that Defendants own more than 30% of the market share with respect to opioid prescription pain relief medicines throughout the State of California, including within San Diego County.

65.    Consumers are forced to purchase the overdose reversal medications, including Narcan and/or Naloxone, at rates set by Defendants in order to purchase the necessary, and often, time sensitive, opioid prescription pain relief medicine. As a result, consumers are forced to pay higher prices than what they would have otherwise had to.

66.    Additionally, the tying arrangements have precluded consumers, including Plaintiff and other members of the Class, from purchasing the product from other businesses, including competitors of CVS.

///

- 12 -

67.    The ability to purchase prescriptions at other lower-cost non-CVS locations is foreclosed because Plaintiff and consumers are told that this is a necessary purchase.

68.    The Tied products, i.e., the Naloxone, represented a substantial amount of sales.

69.    The tying arrangements imposed by Defendants have caused substantial anti-competitive impact.

70.    On information and belief, the effect of these tied arrangements was to substantially lessen competition or tend to create a monopoly in the sale of opioid prescription medications within California and/or various counties within California, including San Diego County.

71.    The ability of non-CVS pharmacies to compete effectively with Defendants on the merits have been substantially reduced, limited, and foreclosed by Defendants' tying arrangements, the effect of which was to cause substantially lessened competition.

72.    As a direct and proximate result of Defendants' actions, Plaintiff has been injured in that she was deprived of the benefits of healthy competition between companies for the aforementioned productions that would have occurred but for Defendant's unlawful and anti-competitive conduct.

73.    Defendants' actions achieve no legitimate efficiency benefits to counterbalance their demonstrated anticompetitive effects, including the foreclosure of competition.

74.    As a result of Defendants' violation of the Cartwright Act, Plaintiff and the Class Members have been injured in their business and property in an amount not presently known with precision, which at minimum exceeds the minimum jurisdictional requirements.

## SECOND CAUSE OF ACTION
### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE § 17200
### (AGAINST ALL DEFENDANTS)

75.    Plaintiff incorporates the preceding paragraphs of this Complaint.

76.    Plaintiff and each Defendant are each "person(s)" as that term is defined by Cal. Bus. & Prof. Code section 17201. Cal. Bus & Prof. Code section 17204 authorizes a private right of action on both an individual and representative basis.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 13 -

First Amended Class Action Complaint          Case No. 37-2020-00022843-CU-BT-CTL

77.    Cal. Bus. & Prof. Code section 17204, a provision of the Unfair Competition Law (Bus. & Prof. Code sections 17200–17209), confers standing to prosecute actions for relief not only on the public officials named therein, but on private individuals, i.e., "any person acting for the interests of itself, its members or the general public." Thus, a private Plaintiff who has suffered a financial injury may sue to obtain relief for others.

78.    "Unfair competition" is defined by Bus. & Prof. Code section 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in Section 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

79.    California Business & Professions Code section 17203 provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure . . .

**A. *"Unlawful" Prong***

80.    By knowingly and intentionally tying the purchase of opioid medicines to the purchase of opioid overdose reversal medications and which is prohibited, Defendant CVS has routinely engaged in unlawful business practices.

81.    Cal. Bus. & Prof. Code section 16727 states:

> It shall be unlawful for any person to lease or make a sale or contract for the sale of goods, merchandise, machinery, supplies, commodities for use within the State, or to fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, merchandise, machinery, supplies, commodities, or services of a competitor or competitors of the lessor or seller, where the effect of such

- 14 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of trade or commerce in any section of the State.

82. Cal. Civ. Code sections 1572, 1709, and 1710 prohibit the suggestion or assertion of facts which are not true with an intent to alter his position to his injury.

83. California Business & Professions Code section 733 prohibits a pharmacy from refusing to fill a prescription drug that has been legally prescribed or legally ordered for that patient.

84. Specifically, Cal. Bus. & Prof. Code section 733(a) states: "(a) A licentiate shall not obstruct a patient in obtaining a prescription drug or device that has been legally prescribed or ordered for that patient."

85. Because as alleged herein CVS's business practices and conduct entailed violations of Cal. Bus & Prof. Code sections 16720 and16727, and Cal. Civ. Code sections 733(a), 1572, 1709, and 1710, Defendants violated California's Unfair Competition Law, Bus. & Prof. Code sections 17200, *et seq.*, which provide a cause of action for an "unlawful" business act or practice perpetrated on consumers.

*86.* CVS violated Cal. Bus. & Prof. Code sections 17200, *et seq.* through unfair, unlawful, and deceptive business practices. CVS violated California's Unfair Competition Law, Bus. & Prof. Code sections 17200, *et seq.*, which provide a cause of action for an "unlawful" business acts or practices perpetrated on consumers.

87. CVS had other reasonably available alternatives to further its legitimate business interests, other than the conduct described herein, including continuing its massive campaign to coerce consumers to purchase opioid overdose reversal medication.

88. Plaintiff suffered actual monetary financial injury in that she was forced to pay money for medication at a cost higher much higher than she would have been but for Defendants' unlawful and anti-competitive conduct.

89. Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

///

- 15 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

**B.** *"Unfair" Prong*

90.    CVS's actions and representations constitute an "unfair" business act or practice under section 17200 in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

91.    Without limitation, the business practices describe herein are "unfair" and shock the conscience because they offend established public policy, violate California statutory protections, and are objectively immoral, unethical, unconscionable, oppressive, unscrupulous and/or substantially injurious to consumers in that Defendants' conduct caused Plaintiff and the Class Members to spend monies.

92.    At a date presently unknown to Plaintiff, but at least four years prior to the filing of this action, and as set forth above, Defendants committed acts of unfair competition as defined by Cal. Bus. & Prof. Code sections 17200, *et seq.*, as described herein.

93.    Defendants could and should have furthered their legitimate business interests by not perpetrating fraud on the entire representative class of California borrowers by forcing consumers to purchase items unnecessarily in order to obtain necessary and lawfully prescribed medications. Plaintiff and other members of the Class could not have reasonably avoided the injury suffered by each of them.

94.    Plaintiff seeks restitution of all amounts expended for the purchase of Naloxone in connection with CVS's practice of forcing consumers to simultaneously purchase Naloxone or similar drug designed to rapidly reverse an opioid overdose, in order to fill a prescription for a medication containing opioids.

95.    Plaintiff further seeks a preliminary and permanent injunction prohibiting CVS from continuing its practice of forcing consumers to simultaneously purchase Naloxone, or similar drug designed to rapidly reverse an opioid overdose, in order to fill a prescription for a medication containing opioids.

96.    Plaintiff reserves the right to allege further conduct that constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

### THIRD CAUSE OF ACTION
### INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
### [CAL. CIVIL CODE §§ 1750, *ET SEQ.*]
### (AGAINST ALL DEFENDANTS)

97.     Plaintiff incorporates the preceding paragraphs of this Complaint.

98.     Concurrently with filing this proposed Class Action Complaint, Plaintiff delivered Notice to Defendants as required under California's Consumer Legal Remedies Act ("CLRA"), Civil Code section 1782, outlining the claims and allegations of this Complaint (see **Exhibit 1** attached hereto). Plaintiff's Notice demanded that Defendants cease and desist the practice of requiring consumers to purchase an opioid overdose reversal medication in order to purchase a legally prescribed medication for pain relief containing opioids. The Notice demanded that all consumers subject to this practice of requiring the purchase of an opioid reversal medication be identified and provided with restitution.

99.     California Civil Code section 1770(a) provides in pertinent part:

"(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful:

(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services;

(3) Misrepresenting the affiliation, connection, or association with, or certification by, another;

……

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

……

(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(15) Representing that a part, replacement, or repair service is needed when it is not;

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

……

(19) Inserting an unconscionable provision in the contract.

- 17 -

First Amended Class Action Complaint          Case No. 37-2020-00022843-CU-BT-CTL

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

100.    Plaintiff is informed and believes, and based thereon alleges, that the conduct of Defendants is systematic and continuous, and continues to harm consumers who may be unaware that Defendants subject them to practice of requiring consumers to purchase an opioid overdose reversal medication in order to purchase a legally prescribed medication for pain relief containing opioids, making false representations that the concomitant purchase of an opioid overdose reversal medication was legally required in order for CVS to be permitted to fill the legally prescribed medication for pain relief containing opioids and refusing to fill a prescription drug that has been legally prescribed for that patient.

101.    Plaintiff alleges that Defendants' conduct violates the subdivisions of Civil Code section 1770 as alleged above and is unlawful.

102.    Plaintiff and all consumers who were unwittingly subject to Defendants' unlawful practices are suffering and have suffered financial and other economic harm, and continue to do so since as of the date of this Complaint, Defendants still continue to require consumers to purchase an opioid overdose reversal medication in order to purchase a legally prescribed medication for pain relief containing opioids.

103.    Plaintiff is informed and believes the harms are continuous and ongoing and are injurious to the public and consumers, and that said harms are as a direct legal result and caused by Defendants' nefarious and unlawful conduct as herein alleged.

104.    Since giving Notice in **Exhibit 1**, based on Plaintiff's knowledge, information, and belief, there has been no compliance, or any effort by any Defendants to comply with Cal. Civil Code sections 1782(b) and/or (c). As a consequence, amendment of the initial Complaint is permitted as a matter of right.

105.    At present, no remedy has been provided and absent Court action to enjoin said practices, Plaintiff is informed and believes the unlawful conduct will continue.

106.    At the appropriate time, Plaintiff will seek an order from the Court requiring Defendants to cease and desist its unlawful practices.

107.    Defendants were provided legal notice of claim as shown in **Exhibit 1**, by letter dated June 26, 2020. More than 30 days have elapsed and no notice of cease and desist, cure,

- 18 -

remedy, and/or notice and restitution as outlined by Civil Code section 1782(b) has been provided since the date of the June 26, 2020 Notice. Based on that Notice, and <u>Morgan v. AT&T Wireless Services, Inc.</u> (2009) 177 Cal.App.4th 1235, 1260, Plaintiff amends the Complaint to add claims for actual damages, statutory damages, restitution, and treble damages to the extent permitted by the CLRA and Civil Code sections 1780(a)(1)-(5).

## VII.    <u>PRAYER FOR RELIEF</u>

Plaintiff Lisa L. Lee, on behalf of herself and all members of the Class, prays for judgment as follows:

a.    That the Court declare, adjudge, and decree that Defendants have committed the violations of the Cartwright Act and the UCL alleged herein;

b.    That the Court determine that Plaintiff's Cartwright Act and UCL claims may be maintained as a class action pursuant to Cal. Code of Civ. Proc. section 382;

c.    That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct alleged herein, or conduct having a similar purpose or effect; That the Court enter an order enjoining Defendants from continuing to implement its tying arrangements, or contracts or agreements having a similar purpose or effect alleged herein; That the Court enter an order enjoining Defendants from continuing their practice of forcing consumers to simultaneously purchase Naloxone or similar drug, designed to rapidly reverse an opioid overdose, in order to fill a prescription for a medication containing opioids.

d.    That Defendants provide Class Members, in an amount to be proven at trial, to be trebled according to law, plus interest -- including prejudgment interest -- to compensate them for the overcharges they incurred from CVS's violations of California law;

///

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

First Amended Class Action Complaint        Case No. 37-2020-00022843-CU-BT-CTL

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

e.      That Defendants provide Class Members with restitution for the overcharges that were extracted by violating the California Cartwright Act, California Business and Professions Code, and the Unfair Competition Law;

f.       An order requiring imposition of a constructive trust and/or disgorgement of Defendants' ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and, also, to restore to Plaintiff and members of the Class all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes, or regulations, or constituting unfair competition;

g.      Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendants from retaining the benefits of their wrongful conduct;

h.      An award of costs necessary to perform an accounting and/or administration costs for distribution of restitution to the proposed class;

i.       For actual damages, restitution, statutory damages, and treble damages to the extent permitted by Cal. Civil Code sections 1780(a)(1)-(5), in an amount according to proof;

j.       Prejudgment and post judgment interest;

k.      Exemplary and/or punitive damages for intentional misrepresentations pursuant to, *inter alia*, Cal. Civ. Code section 3294;

l.       Costs of this suit;

m.      Reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure section 1021.5;

n.      Public injunctive relief prohibiting CVS from future violations of the aforementioned unlawful and unfair practices, pursuant to Cal. Bus. & Prof. Code section 17204; and

o.      Awarding any and all other relief that this Court deems necessary, just, equitable, and proper.

- 20 -

## VIII.  <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury trial of all claims triable as of right by jury.


Dated: August 3, 2020                    COHELAN KHOURY & SINGER

By: _____

Michael D. Singer, Esq.
Kristina De La Rosa, Esq.
Attorneys for Plaintiff LISA L. LEE

First Amended Class Action Complaint          Case No. 37-2020-00022843-CU-BT-CTL

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

# EXHIBIT 1

# COHELAN KHOURY & SINGER

A PARTNERSHIP OF PROFESSIONAL LAW CORPORATIONS

TIMOTHY D. COHELAN, APLC✦
ISAM C. KHOURY, APC
DIANA M. KHOURY, APC
MICHAEL D. SINGER, APLC•

(✦Also admitted in the District of Columbia)
(•Also admitted in Colorado)

ATTORNEYS AT LAW

605 "C" STREET, SUITE 200
SAN DIEGO, CALIFORNIA 92101-5305
Telephone: (619) 595-3001
Facsimile: (619) 595-3000
www.ckslaw.com

JEFF GERACI
J. JASON HILL†
MARTA MANUS
KRISTINA DE LA ROSA
ROSEMARY C. KHOURY

(† Also admitted in Illinois)

June 26, 2020

## VIA CERTIFIED U.S. MAIL WITH RETURN RECEIPT

CVS Pharmacy, Inc.                          CVS Health Corporation, Inc.
One CVS Drive                               One CVS Drive
Woonsocket, RI 02895                        Woonsocket, RI 02895

CVS Pharmacy, Inc.
683 Lomas Santa Fe Dr
Solana Beach, CA 92075

Re:  **Notice of Violation of the California Consumer Legal Remedies Act (California Civil Code sections 1750, *et seq.*)**

Dear CVS Pharmacy, Inc. and CVS Health Corporation, Inc.:

On behalf of Lisa L. Lee (hereinafter "Plaintiff"), and all others similarly situated, this letter will notify CVS Pharmacy, Inc. and CVS Health Corporation, Inc. (hereinafter "CVS") that it has violated the California Consumer Legal Remedies Act (hereinafter "CLRA") by using methods or practices, or committing acts declared unlawful by Cal. Bus. & Prof. Code sections 733(a), 16720, and 16727, and Cal. Civ. Code sections 1572, 1709, and 1710 related to the unlawful tying arrangements which CVS has imposed on Plaintiff and other consumers. If CVS fails to respond to this notice within 30 days of the date of this letter, Plaintiff intends to file a complaint seeking damages under the CLRA, as well as other applicable state and federal laws.

## STATEMENT OF VIOLATIONS

The unlawful acts committed by CVS, in violation of the CLRA, include but are not limited to, requiring consumers to purchase an opioid overdose reversal medication in order to purchase a legally prescribed medication for pain relief containing opioids. The unlawful actions committed by CVS include making false representations that the concomitant purchase of an opioid overdose reversal medication was legally required in order for CVS to be permitted to fill the legally prescribed medication for pain relief containing opioids. CVS's unlawful acts also includes refusing to fill a prescription drug that has been legally prescribed for that patient.

California Business & Professions Code section 733(a) prohibits a pharmacy from refusing to fill a prescription drug that has been legally prescribed or legally ordered for that patient: "(a) A licentiate shall not obstruct a patient in obtaining a prescription drug or device that has been legally prescribed or ordered for that patient.:

Cal. Business. & Professions. Code section 16727 states:

It shall be unlawful for any person to lease or make a sale or contract for the sale

CVS Pharmacy, Inc. and CVS Health Corporation, Inc
June 26, 2020
P a g e | **2**

of goods, merchandise, machinery, supplies, commodities for use within the State, or to fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, merchandise, machinery, supplies, commodities, or services of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of trade or commerce in any section of the State.

Cal. Civ. Code sections 1572, 1709, and 1710 prohibit the suggestion or assertion of facts which are not true with an intent to alter another individual's position to his injury.

The unlawful conduct described herein is a violation of the following sections of Cal. Civ. Code section 1770(a):

(2) Misrepresenting the source, sponsorship, approval, or certification of goods or services;

(3) Misrepresenting the affiliation, connection, or association with, or certification by, another;

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have;

(14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(15) Representing that a part, replacement, or repair service is needed when it is not;

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

As a result, CVS violated the CLRA, and specifically Cal. Civ. Code sections 1770(a)(2), (3), (5), (14), (15), and (16).

## STATEMENT OF REMEDIES

Plaintiff demands CVS remedy these violations within thirty days of this Notice by:

A. Identify or make reasonable attempts to identify all consumers who purchased an opioid pain relief medicine and who were also required to purchase an opioid overdose reversal medication, like Naloxone;

B. Notify all consumers described above that upon request, CVS will refund all costs for the purchase of an opioid overdose reversal medication, like Naloxone;

C. In addition to the refund of all costs for the purchase of an opioid overdose reversal medication, like Naloxone, upon request, CVS will pay interest at the legal rate on the excessive costs charged as a result of requiring consumers to purchase an opioid overdose reversal medication, like Naloxone, in order to fill a prescription for opioid pain relief medication;

CVS Pharmacy, Inc. and CVS Health Corporation, Inc
June 26, 2020
P a g e | **3**

    D. Notify all consumers described above that upon request and reasonable proof, CVS will pay for all injuries or damages as a result of unlawfully requiring consumers to purchase an opioid overdose reversal medication, like Naloxone, in order to fill a prescription for opioid pain relief medication;

    E. Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all affected consumers;

    F. Immediately cease from unlawfully requiring consumers to purchase an opioid overdose reversal medication, like Naloxone, in order to fill a prescription for opioid pain relief medication;

    G. Pay Plaintiff's attorney's fees and costs.

    Please direct all communications and responses regarding this notice to Plaintiff's counsel:

**COHELAN KHOURY & SINGER**
Isam C. Khoury, Esq.
Michael D. Singer, Esq.
Kristina De La Rosa, Esq.
kdelarosa@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

    Thank you for your attention to this matter.

                Very truly yours,
                COHELAN KHOURY & SINGER

                Kristina De La Rosa, Esq.